## KORZENDORFER REALTY, INC. *v.* BUFALO

[No. 148, September Term, 1971.]

*Decided January 19, 1972.*

294

The cause was argued before HAMMOND, C. J., and McWILLIAMS, FINAN, SINGLEY, SMITH and DIGGES, JJ.

*Charles Michael Tobin* for appellant.

*Edward A. Dacy* for appellee.

SINGLEY, J., delivered the opinion of the Court.

Bufalo, a salesman for Korzendorfer Realty, Inc., obtained a judgment in the Circuit Court for Montgomery County against Korzendorfer Realty for $7,592.72, being a share of commissions which he claimed was due him. Korzendorfer Realty would have us reverse for three reasons: first, that the declaration was so framed as to make recovery on quantum meruit impossible; second, that the court was in error when it predicated the recovery on Korzendorfer Realty's "Office Policy for Commercial Sales and Listings"; and finally, that Bufalo was not the procuring cause of the sale.

Bufalo was first employed by Korzendorfer Realty in May of 1969. Shortly thereafter, through his efforts, a tract of some 16 acres in Montgomery County owned by Mrs. Bufalo's family known as the Montrose Center property was listed with Korzendorfer Realty for sale.[1] Later, Bufalo was instrumental in forming a syndicate which bought the property, and when the sale was consummated, Bufalo was paid for having obtained the listing 15% of Korzendorfer Realty's commission.

In midsummer, 1969, Bufalo received an inquiry about the Montrose Center tract from T. Stanley Holland, Jr., a salesman for H. G. Smithy Company, another broker, which at that time was acting for an undisclosed principal, later determined to be Washington Gas Light Company. Bufalo testified that Holland had first called Bufalo's brother-in-law, one of the former owners of the property, who had referred Holland to Bufalo because of the purchase option which was then outstanding. Bufalo discussed the property with Holland on two occasions at Korzendorfer Realty's office and gave him a brochure which had been prepared and gave him other information including contour plats. Ultimately, Washington Gas Light bought a portion of the Montrose Center tract for

---

1. In a strict sense, this was not a listing, although it was treated as such. Bufalo found that the owners preferred to give Korzendorfer Realty a purchase option.

$602,555. The brokerage commission was equally divided between Korzendorfer Realty and H. G. Smithy Company, each of which received $25,307.41. Bufalo, arguing that he was the procuring cause of this sale, claimed 30% of Korzendorfer Realty's commission, or $7,592.72 [2] and ultimately recovered judgment in this amount.

Korzendorfer Realty first argues that since Bufalo's declaration did not contain the common counts, recovery cannot be based on quantum meruit. We do not see it quite that way. While Code (1957, 1969 Repl. Vol.) Art. 75, § 14 sets out the common counts, the prefatory statement should not be overlooked:

> "The forms of pleadings which follow shall be sufficient and the like forms may be used with such modifications as may be necessary to meet the facts of the case, but *nothing herein contained shall render it erroneous or irregular to depart from said forms so long as substance is expressed.*" (emphasis supplied)

It has long been held that substance takes precedence over form and that a plain statement of facts will suffice, *Pearce v. Watkins,* 68 Md. 534, 538, 13 A. 376 (1888); *Gott v. State, ex rel. Barnard,* 44 Md. 319, 336-37 (1876). Bufalo's declaration said, in part:

> "That at all times herein mentioned the Plaintiff's occupation was that of a real estate salesman employed on a commission basis by the Defendant; * * * that as a result of the efforts of the Plaintiff. and by and through his assistance and co-operation, five and one-half acres of the aforesaid Montrose Center was sold to the Washington Gas Light Company from which sale the Plaintiff was entitled to a commission of approximately $7500.00; * * *."

It should be noted that Korzendorfer Realty did not demur to the declaration as permitted by Maryland Rule

---

2. This figure should have been $7,592.22.

345 a. 2. For the effect of this, see 2 *Poe's Pleading and Practice* § 586, at 253 (6th ed. 1970).

The declaration contained a concise statement which specified the amount owed, identified the corporation by which it was owed, and explained the reason why it was owed, but lacked an averment that the work had been done at the defendant's request. This was cured when, before any testimony was taken, counsel for the parties stipulated in open court that one of the issues in the case was

> "[W]hether or not [Bufalo] was entitled to participate in a commission to Korzendorfer Realty on the sale of some five and one-half acres of the Montrose tract to the Washington Gas Light Company."

Taken together, we think that the declaration and the stipulation satisfied the requirement of Maryland Rule 301 c.:

> "Any pleading which contains a clear statement of the facts necessary to constitute a cause of action or ground of defense shall be sufficient without reference to mere form * * *."

and met the test of the cases which hold that a plaintiff is required to state his claim with such accuracy as will show what is at issue between the parties, in order that the defendant may be apprised of the nature of the complaint he is called upon to traverse and defend, *Read Drug v. Colwill Constr.,* 250 Md. 406, 414, 243 A. 2d 548 (1968) ; *Fletcher v. Havre de Grace Fireworks Co.,* 229 Md. 196, 200, 177 A. 2d 908, 183 A. 2d 386 (1962) ; *Lapp v. Stanton,* 116 Md. 197, 199, 81 A. 675 (1911).

It is true, as Korzendorfer Realty contends, and the lower court recognized, that the declaration would not support an action on a specialty, Rule 340 b. 2. It is equally true that the stipulation submitted an issue for the court's determination just as if it had been raised on a single common count for work and labor done, a

classic example of implied or common assumpsit, 1 *Poe, supra* § 88, at 110. Parenthetically, it should be noted that when a specialty has been fully performed except for the payment of the consideration, recovery may be had on the common counts, *Appleman v. Michael,* 43 Md. 269, 282 (1875) ; *Ridgeley v. Crandall,* 4 Md. 435, 441 (1853) ; 1 *Poe, supra* § 101, at 124.

Korzendorfer Realty's second point is that it was error for the court to rely on Korzendorfer Realty's "Office Policy for Commercial Sales and Listings," put in evidence by Bufalo which provided that under certain specified circumstances, Korzendorfer Realty's salesmen would receive 30% of the commission payable to Korzendorfer Realty.[3] As the court below noted, no testimony was adduced by Korzendorfer Realty as to the value of Bufalo's services.

Here again, the question seems to have been resolved by a stipulation made by counsel during Bufalo's direct examination. The colloquy went this way:

"Q. Can you tell the Court what you would be entitled to?

"(Mr. McClosky [counsel for Korzendorfer Realty]) Objection.

"(Mr. Dacy [counsel for Bufalo]) Strike that.

"Your Honor, we have already, I think, stipulated to that, did we not?

"(Mr. McClosky) Yes. We have not stipulated he is entitled to it.

"We have stipulated what he would receive

---

3. The statement of policy said, in part:
   "A. 4. In special cases on our listings, if our salesman (lister) assists the co-operating broker who makes the sale, and: a) spends a lot of time with the co-operating broker; b) spends a lot of time showing property to the broker's client; or c) sends out complete information to the co-operating broker in concluding the sale, in this case, our salesman (lister) will receive 30% of the gross commission received by the office. In special cases such as this, *Korzendorfer* will be the sole judge as to whether our salesman (lister) has earned the thirty per cent."

if the Plaintiff's version of the case is deemed to be correct.

"(The Court) All right.

"By Mr. Dacy:

"Q. What would be your portion of that commission, Mr. Bufalo?

"A. Well, according to the sheet, I stand to be corrected, I figure that 30 per cent of the commission that came into the office I was entitled to.

"Q. All right.

"A. Which I believe was $7,500.00.* * *"

The court below concluded, and we think quite properly, that, there being no other evidence of the value of Bufalo's services, a quantum meruit recovery could be predicated on the stipulated figure of 30% of the commission received by Korzendorfer Realty, *Mayne v. Eig,* 215 Md. 270, 284, 137 A. 2d 557 (1958).

Korzendorfer Realty's final argument is either that Bufalo was not the procuring cause of the sale to Washington Gas Light or alternatively that Bufalo was not entitled to a commission because the Montrose Center property had been listed with Korzendorfer Realty by the syndicate, and not by Bufalo.

We had occasion to consider the rule of the Maryland cases in *Ricker v. Abrams,* 263 Md. 509, 283 A. 2d 583 (1971). While the broker has the burden of proving that he was the procuring cause, *Steele v. Seth,* 211 Md. 323, 328, 127 A. 2d 388 (1956), the fact that the negotiations are concluded by others does not necessarily deprive the broker of his right to commissions, *Ricker v. Abrams, supra,* nor does it matter whether the broker's services are slight or extensive, whether he showed the property, or whether he participated in the execution of the contract if his efforts were the proximate cause of interesting the purchaser, and of the purchaser's ultimate agreement to buy, *Cowal v. Marletta,* 216 Md. 222, 228, 139 A. 2d 712 (1953).

Bufalo was an employee of Korzendorfer Realty when Mr. Holland telephoned him, inquiring about the property. Bufalo acquainted Holland with the property, discussed it with him on two occasions, gave him such materials as were available, and then took Mr. Holland to Mr. Korzendorfer when discussions commenced regarding price. As was said in *Sanders v. Devereux*, 231 Md. 224, 231, 189 A. 2d 604 (1963) :

> "In order for a broker to establish that he is the procuring cause of a sale of real estate, in the absence of a specific contract, the evidence must show or permit the inference that the sale was accomplished as the result of his action in discovering the purchaser, acquainting him with the property and referring him to the seller for further negotiations." [citing cases]

This is precisely the role Bufalo played, which made him the procuring cause of the sale.

With regard to whether the fact that the Montrose Center property had been listed with Korzendorfer Realty by the syndicate and not by Bufalo deprived Bufalo of any right to participate in commissions, Bufalo testified that Herbert J. Korzendorfer, president of Korzendorfer Realty, had promised him a participation in the commissions should he make a sale. This promise was made after Holland's telephone call, but before his first conversation with Bufalo at the Korzendorfer Realty office. Mr. Korzendorfer conceded there had been such an inquiry and that he had told Bufalo "[e]verybody that works in the office gets paid for what they do and what they produce.* * *" The court below regarded this as dispositive of Bufalo's rights in the matter, and so do we.

*Judgment affirmed, costs to be paid by appellant.*